## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL ASSOCIATION OF REALTORS, an Illinois Not-For-Profit Corporation | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | |
| JOHN FOTHERGILL, an individual; LISTED ON, INC., a Florida Corporation; and GET LISTED ON, INC., a Florida Corporation | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT FOR FALSE DESIGNATION OF ORIGIN; FALSE ADVERTISING; TRADEMARK INFRINGEMENT; UNFAIR COMPETITION; CYBERSQUATTING

## PARTIES

1.      Plaintiff National Association of Realtors ("NAR") is an Illinois not-for-profit corporation with its principal place of business at 430 North Michigan Avenue, Chicago, Illinois 60611.

2.      Defendant John Fothergill ("Fothergill") is an individual residing at 11716 Mahogany Run, Fort Myers, Florida 33913.

3.      Defendant Listed On, Inc. is a Florida corporation with its principal place of business at 5781 Lee Blvd. #208-312, Fort Myers, Florida 33971.

4.      Defendant Get Listed On, Inc. is a Florida corporation with its principal place of business at 5781 Lee Blvd. #208-312, Fort Myers, Florida 33971.

5.      Defendant Fothergill is registered agent, officer, and director of Defendants Listed On, Inc. and Get Listed On, Inc.  Defendant Fothergill owns and controls Defendants Listed On, Inc. and Get Listed On, Inc. Each Defendant engages in the infringing activities complained of herein.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as Plaintiff is a citizen of Illinois and Defendants are citizens of Florida and the amount in controversy exceeds $75,000 and pursuant to 28 U.S.C. §§ 1338(a)-(b) as the Plaintiff's cause of action arises under the Lanham Act, 15 U.S.C. §§ 1051–1141.  Further, this Court has jurisdiction over Plaintiff's Illinois state statutory and common law claims pursuant to 28 U.S.C. §§ 1367(a) and 1338(b).

7.      This Court may exercise personal jurisdiction over Defendants based on their contacts with this forum, including at least, regularly and intentionally transacting business within Illinois, the making or performance of a contract or promise substantially connected with Illinois, as well as the maintenance of several interactive commercial websites that (a) solicit Illinois residents to list properties on NAR's directories and web pages, (b) display advertisements that are targeted to Illinois residents; and (c) directly target Illinois residents looking to buy or sell real estate by providing real estate listings in Illinois.

8.      Venue is proper within the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

9.      NAR is the nation's largest trade association, and is composed of members engaged in various aspects of the real estate business, including, but not limited to, brokerage, management, appraising, counseling, land development, and building.

10.      NAR was founded in 1908 with 120 members, 19 Boards, and one state Association and has grown to a membership that currently exceeds one million members. Each of these members belongs to one or more of 1,350 local associations or boards, and 54 state and territorial associations of Realtors.

11.      Each NAR member pledges to abide by a strict Code of Ethics, which NAR first adopted in 1913. Attached as **Exhibit A** is a true and correct copy of the current NAR Code of Ethics.

12.      The term REALTOR was coined in 1916 to identify real estate professionals who are members of NAR and subscribers to its strict Code of Ethics. The term has been continually used by NAR to identify its members since March 31, 1916. As such, the term REALTOR is the one universal way the members of NAR have to distinguish themselves from all others in the real estate profession.

13.      NAR owns numerous registrations and applications for the REALTOR trademark in the United States Patent and Trademark Office, including but not limited to the following:

| MARK | REG'N NO. | REG'N DATE | GOODS/SERVICES |
|------|-----------|------------|----------------|
| REALTORS | 515,200 | Sept. 13, 1949 | brokerage of real estate, industrial brokerage, farm brokerage, mortgage brokerage, in the appraisal of real estate, management of real estate, in the building of structures on real estate, in the subdivision of real estate properties, and in community planning for the development of raw land and slum clearance areas |

| MARK | REG'N NO. | REG'N DATE | GOODS/SERVICES |
|---|---|---|---|
| REALTOR | 519,789 | Jan. 10, 1950 | brokerage of real estate, industrial brokerage, farm brokerage, mortgage brokerage, in the appraisal of real estate, management of real estate, in the building of structures on real estate, in the subdivision of real estate properties, and in community planning for the development of raw land and slum clearance areas |
|  (R REALTOR MLS MULTIPLE LISTING SERVICE & Design) | 1,006,457 | Mar. 11, 1975 | real estate brokerage |
|  (R & Design) | 1,009,745 | Apr. 29, 1975 | indicating membership in applicant |
| NATIONAL ASSOCIATION OF REALTORS | 1,018,600 | Aug.19, 1975 | association services-namely, promoting the interests of member real estate agents and brokers and the public interest in improving real estate services |
|  REALTOR (R REALTOR & Design) | 1,137,081 | June 17, 1980 | indicating collective membership in applicant |
| REALTOR NEWS | 1,186,703 | Jan. 19, 1982 | a newspaper dealing principally with topics of interest to real estate professionals who are members of applicant organization |
| REALTOR ASSOCIATE | 1,323,913 | Mar. 5, 1985 | indicating membership in an organization for real estate professionals |
| NATIONAL REALTORS DATABASE SYSTEM | 2,447,874 | May 1, 2001 | computerized on-line storage of the member and office records of real estate associations nationwide |

4

| MARK | REG'N NO. | REG'N DATE | GOODS/SERVICES |
|---|---|---|---|
| REALTOR TEAM STORE | 2,501,684 | Oct. 30, 2001 | mail order retail store services and retail store services available through multi-user global information networks featuring products for use by professionals in the real estate industry |
|  (REALTOR MAGAZINE'S GOOD NEIGHBOR AWARDS & Design) | 2,682,440 | Feb. 4, 2003 | entertainment services, namely, an annual award program to recognize real estate professionals for outstanding contributions to their communities |
| REALTOR | 2,983,269 | Aug. 9, 2005 | electronically operated lock boxes |
|  REALTOR (R REALTOR & Design) | 3,135,615 | Aug. 29, 2006 | electronically operated lock boxes |
|  Benefits REALTOR (R REALTOR BENEFITS & Design) | 3,257,049 | June 26, 2007 | association services, namely, development and administration of a discount purchasing program for enabling participants to obtain discounts from vendors who have agreed to provide discounts or other enhancements on their goods and services for members |
| REALTOR BENEFITS | 3,259,354 | July 3, 2007 | association services, namely, development and administration of a discount purchasing program for enabling participants to obtain discounts from vendors who have agreed to provide discounts or other enhancements on their goods and services for members |
|  REALTORS Federal Credit Union (R REALTORS FEDERAL CREDIT UNION & Design | 3,830,593 | Aug. 10, 2010 | credit union services |
| REALTORS VALUATION MODEL | 4,029,337 | Sept. 20, 2011 | real estate appraisal and valuation |

| MARK | REG'N NO. | REG'N DATE | GOODS/SERVICES |
|------|-----------|------------|----------------|
| REALTORS PROPERTY RESOURCE | 4,035,340 | Oct. 4, 2011 | providing an on-line computer database featuring real property tax information; providing an on-line computer database featuring real property valuation and real estate multiple listing information; providing an on-line computer database featuring real property site selection information. |

(collectively, the "REALTOR Marks").

14.    Each of these REALTOR Marks registrations is valid, subsisting, and owned by NAR.  In addition, several of the registrations, most notably the registrations for REALTORS (Reg. No. 515,200), REALTOR (Reg. No. 519,789), R REALTOR MLS MULTIPLE LISTING SERVICE & Design (Reg. No. 1,006,457), R & Design (Reg. No. 1,009,745), NATIONAL ASSOCIATION OF REALTORS (Reg. No. 1,018,600), R REALTOR & Design (Reg. No. 1,137,081), REALTOR NEWS (Reg. No. 1,186,703), REALTOR ASSOCIATE (Reg. No. 1,323,913), NATIONAL REALTORS DATABASE SYSTEM (Reg. No. 2,447,874), REALTOR TEAM STORE (Reg. No. 2,501,684), REALTOR MAGAZINE'S GOOD NEIGHBOR AWARDS & Design (Reg. No. 2,682,440), REALTOR (Reg. No. 2,983,269), and the R REALTOR & Design (Reg. No. 3,135,615) are incontestable in accordance with 15 U.S.C. § 1065, and are "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce" in accordance with 15 U.S.C. § 1115(b).

15.    NAR's REALTOR and REALTORS marks are collective membership marks, which are used by its members, subject to strict rules outlined in NAR's "Membership Marks Manual" (attached hereto as **Exhibit B**), to indicate membership in NAR.

6

16.     NAR exercises control over the use of the REALTOR Marks by NAR's members. NAR grants its members a limited license to use the REALTOR Marks, subject to compliance with the rules set forth in its Membership Marks Manual.  This limited license granted by NAR allows its members to use the REALTOR Marks only in connection with their own name or the legal name of their real estate business in order to identify themselves as members of NAR. Therefore, a member may use any of the REALTOR Marks in a domain name or advertisement, but only in connection with his name or firm's name.  For example, John Doe, the owner of a brokerage called ABC Realty, could use the domain names <JohnDoeRealtor.com> or <ABCRealtyRealtors.com> but could not include any other non-identifying terms in connection with the REALTOR Marks.

17.     In 1998, NAR launched a Public Awareness Campaign (the "Campaign") designed to highlight the benefits to the public of contacting and using the services of a REALTOR, as opposed to other real estate professionals or selling by owner, when buying or selling real estate.  Over the course of the Campaign, now in its thirteenth year, NAR has spent in excess of 350 million dollars on advertising through various forms of media, including TV, radio, and the Internet.

18.     The Campaign has proven to be enormously successful for NAR.  In 2005, for example, more than 13,000 Campaign spots were run on TV, cable, network radio, and satellite radio.  These spots reached an estimated 97 percent of the target audience of 25 to 54 year olds with household incomes of $50,000 or more.  The English-language Campaign commercials were honored with a Telly award, which recognizes excellence in local, regional, and cable TV commercials.

19.     NAR also promotes the REALTOR Marks through an active Internet presence. NAR's primary websites are located at <Realtor.com> and <Realtor.org>.

20.     The <Realtor.com> website currently includes information about more than 3 million properties listed for sale and is one of the most viewed websites in America, consistently ranking as one of the most viewed real estate website in America. *See* printout outlining <Realtor.com> website analytics, including traffic analysis, and a printout from the Alexa website that ranks <Realtor.com> the 182nd most viewed website in America as **Exhibit C**.

21.     <Realtor.com> is NAR's publicly accessible website designed to provide members with an internet-based means of marketing real property and providing the public with information on properties that have been listed for sale with brokers (Listing is a property generally understood to mean that the seller has entered into a contractual agreement for a broker to provide certain services related to the sale of the property).

22.     NAR does not allow the display on <Realtor.com> of properties that are not listed with a broker.  In particular, NAR does not permit the display of properties being offered for sale by the owner without being listed with a real estate broker ("For Sale By Owner" or "FSBO").

23.     NAR also operates <Realtor.org> for NAR's members.  In addition to members-only content, however, <Realtor.org> provides a wealth of information about NAR and the real estate industry to potential members, the news media, and consumers.

24.     Every year, NAR, its members, and its local boards and associations invest many millions of dollars in the promotion of the REALTOR Marks, and sell many millions of dollars worth of services in connection with the REALTOR Marks.

25.     As a result of the care and skill exercised by NAR in the promotion of its REALTOR Marks on behalf of its million members, NAR's supervision and control over the

nature and quality of the use of the REALTOR Marks, as well as the extensive sales, advertising and promotion of those marks by NAR and its members, the REALTOR Marks have become extremely famous in the United States and worldwide, and have come to represent extraordinarily valuable goodwill owned by NAR.

26.    The REALTOR Marks and variants thereof are exclusively associated with NAR and its members and the brokerage services and related goods and services offered by those members.

27.    The REALTOR Marks are distinctive and famous, and acquired such fame and distinctiveness long prior to any date on which Defendants began engaging in the wrongful conduct set forth below.

**Defendant's Illegal Actions**

28.    Defendant Fothergill is a member of NAR and is therefore contractually obligated to abide by the rules governing use of the REALTOR Marks. This includes complying with the limited license granted to Defendant Fothergill by NAR to use the REALTOR Marks only in connection with a member's name or the legal name of a member's real estate firm.

29.    In 2009, long after NAR's REALTOR Marks became distinctive and famous and well after the <Realtor.com> site was active, Defendant Fothergill registered <listonrealtor.com> and <listitonrealtor.com> domain names.

30.    At the time Defendant Fothergill registered those domain names, he had been a member of NAR for more than thirteen years and, as such, knew that he was contractually obligated to abide by the rules governing the use of the REALTOR Marks.

31.    NAR sent a series of cease and desist letters and email messages to Defendant Fothergill objecting to Defendant Fothergill's registration, advertising, and use of the domain

names and underlying websites, including the improper use of the REALTOR Marks. Attached as **Exhibit D** are copies of correspondence NAR sent to Defendant Fothergill.

32.     Rather than substantively respond or correct his misuse, and in an apparent effort to evade the letter and spirit of the NAR rules to which he agreed to abide, Defendant Fothergill filed a "doing business as" form with the state of Florida for the name "Listiton." Defendant Fothergill argued that the DBA entitled him to use the infringing <listonrealtor.com> and <listitonrealtor.com> domain names.

33.     NAR filed a Complaint before the World Intellectual Property Organization ("WIPO") pursuant to the Uniform Domain Name Dispute Resolution Policy ("UDRP"), challenging Defendant Fothergill's registration of the two domain names. On September 20, 2010, WIPO issued its decision in favor of NAR ordering Mr. Fothergill to transfer the domain names to NAR stating:

> [NAR's license] does not appear to have been designed to allow NAR members to cleverly call their company by a descriptive name (such as "I'm the Top") and then use that name, in conjunction with the REALTOR mark, to create an attractive domain name (*e.g.* <imthetoprealtor.com>; and
>
> because [Fothergill's] scheme **smacks of a bad faith intent to undermine the intention of the parties with an overly-literal application of the words of the license that disregards the restrictions contained in NAR's Membership Marks Manual**, [Fothergill] acted in contravention of the NAR Manual and trademark license.

(emphasis added). Attached as **Exhibit E** is a copy of the WIPO Decision.

34.     Subsequent to this decision, on October 1, 2010, Fothergill filed a corporate entity name change registering his company as "Listed On, Inc." in the state of Florida.

35.     Upon information and belief, Defendants also own the domain name registrations for <listedonrealtor.com>, <listedonrealtor.net>, <getlistedonrealtor.com>, <sellitnowonrealtor.com>, and <realtorfy.com>. Shortly after the <listitonrealtor.com> and

<listonrealtor.com> domain names were transferred to NAR's control, Defendants started using <listedonrealtor.com>, <listedonrealtor.net>, and <getlistedonrealtor.com> in the same fashion as the <listonrealtor.com> and <listitonrealtor.com> domain names as well as registered and, on information and belief, intend to use <sellitnowonrealtor.com> and <realtorfy.com> in the same fashion (collectively, the "Infringing Domain Names"). Attached as **Exhibit F** is a screenshot of Defendants' <listedonrealtor.com> webpage that references the REALTOR Marks at least 40 times.[1] Attached as **Exhibit G** is a screenshot of Defendants' <getlistedonrealtor.com> main webpage that references the REALTOR Marks at least 30 times. Attached as **Exhibit H** are GoDaddy Whois reports for the <sellitnowonrealtor.com> and <realtorfy.com> registrations.

36. Defendants' Infringing Domain Names are identical to or confusingly similar with NAR's REALTOR Marks because they consist of and incorporate the entirety of NAR's famous and distinctive REALTOR Marks.

37. Defendants' Infringing Domain Names add only the non-distinctive terms "List on", "List it on", "Listed on", "Get listed on", and "sell it now on" or the letters "fy" to NAR's REALTOR mark. Internet users are likely to be misled and confused as to the meaning of these non-distinctive words and letters paired with the REALTOR mark because they will be led to believe they can advertise their FSBO property on <Realtor.com>.

38. Defendants also publish advertising that directs users to a website that offers a "$99 Realtor.com FSBO Package" which purports to allow individuals to advertise their property on <Realtor.com>. NAR does not offer any such package and in fact, has committed to its members that homeowners will always be prohibited from directly advertising property on <Realtor.com> altogether.

---

[1] Defendants' domain name <listedonrealtor.net> mirrors the <listedonrealtor.com> website.

39.     In addition to purporting to list FSBO properties on <Realtor.com>, Defendants' advertisements (collectively, the "Infringing Advertisements") and the websites associated with the Infringing Domain Names also include, but are not limited to, the following false or misleading statements and representations. These statements and representations mislead consumers as to source, sponsorship, or origin of the advertised goods and services, and will cause consumers to believe that Defendants are, or are associated with, NAR or the services offered by NAR under the REALTOR Marks:

(a)



(b)

We are a National Flat Fee Realtor.com Listing Service offering the **smartest and most cost effective way** for any "For Sale By Owner" to market their homes **directly on Realtor.com with NO Commissions Required!**

(c)

*List Your Home On Realtor.com Today* and Pay No Real Estate Commissions! Save $$Thousands$$

(d)

**6 Month Listing for Just $79!**
Enter Coupon Code 711 At Checkout for Discount.

List "For Sale By Owner" on REALTOR.com - NO Commission

(e)

# List on REALTOR.COM

(f)

## $99 Realtor.com FSBO Package
### Showcase Listing and Much More!

(g)

Just $79 for a 6 month Realtor.com Listing!  No Commissions, Period!

Enter coupon code 711 at checkout!
Realtor.com the World's Largest Real Estate <u>BUYERS</u> Website.
8.1 Million Unique Visitors per Month!
List It and Get It Sold or Rented!

(h)

FSBO's! Advertise your <u>Home</u>, <u>Condo</u>, <u>Vacation</u> or <u>Annual Rental</u>, <u>Manufactured Home</u> and <u>Land</u>, located anywhere in America, on Realtor.com— the country's most popular real estate site with nearly 8 million UNIQUE monthly visitors — no matter where you live in the United States.

(i)

## You Know The Benefits of Advertising on Realtor.com!

13

(j)



Realtor.com, the World's Largest Real Estate Website.
8.4 Million Unique Visitors per Month!

List It.. and Get It Sold or Rented!

Questions? Call 866-864-6567

(k)

Want an almost FREE
Realtor.com Showcase
Listing?

Click For Details!

(l)

We offer a flat fee Showcase Listing on Realtor.com in your area for just $79 (enter coupon code 711 at checkout), with NO Commissions, ever required! Take a few minutes and browse our site to learn more about how we market your listing.

(m)

Sign Up Today »

Our **Realtor.com Showcase Flat Fee Listing** and "For Sale By Owner" FSBO advertising is the best of it's kind and **Requires NO Commission!** We'll list your home for sale on Realtor.com and many other popular Real Estate sites!

14

(n)

### Make It Work For You With a Realtor.com <u>Showcase Listing</u>!

Your property will be posted on Realtor.com as a Showcase Listing to make your property STAND OUT. The following features are included:

(o)

Your property will get the exposure that only the worlds largest real estate site can provide AND you retain the right to sell "for sale by owner" and save thousands of dollars by paying no real estate commissions, EVER!

## Your Realtor.com Showcase Listing Package Includes:

## A Showcase Listing on Realtor.com!

(p)



(q)

Your property will get the exposure that only the worlds largest real estate site can provide AND you retain the right to sell "for sale by owner" and save thousands of dollars by paying no real estate commissions, EVER!

(r)

**<u>Realtor.com Advertising Package</u>**
Listing term
Photos on Realtor.com
Buyer emails automatically forwarded to you
Buyer phone calls automatically transferred to you - 24/7
No commission ever required (You are free to offer one!)
Cancel anytime - for any reason - for no additional charge
Showcase Listing on Realtor.com (includes all items below)

- Up to 25 photo images on Realtor.com
- Customized headline on Realtor.com
- Customized 50 character special text marquee on Realtor.com
- Customized 2200 character description on Realtor.com
- Google or Bing Street Maps and Street Level panoramic views

FREE exposure and syndication on 100's of additional websites!
Realtor.com Open House Ads
Realtor.com Traffic Reports
Realtor.com Website Linking
Realtor.com Video Tour Posting

(s)

| **Realtor.com Advertising Package** | **Ultimate** |
|---|---|
| Listing term | 6 - 12 months |
| Photos on Realtor.com | 25 |
| Buyer emails automatically forwarded to you | ✕ |
| Buyer phone calls automatically transferred to you - 24/7 | ✕ |
| No commission ever required (You are free to offer one!) | ✕ |
| Cancel anytime - for any reason - for no additional charge | ✕ |
| Showcase Listing on Realtor.com (includes all items below) | |
| • Up to 25 photo images on Realtor.com | |
| • Customized headline on Realtor.com | |
| • Customized 50 character special text marquee on Realtor.com | ✕ |
| • Customized 2200 character description on Realtor.com | |
| • Google or Bing Street Maps and Street Level panoramic views | |
| FREE exposure and syndication on 100's of additional websites! | ✕ |
| Realtor.com Open House Ads | ✕ |
| Realtor.com Traffic Reports | ✕ |
| Realtor.com Website Linking | ✕ |
| Realtor.com Video Tour Posting | ✕ |

(t)

By advertising on Realtor.com you'll save the commission you'd normally pay a real estate agent, 5% to 7%, depending on your location. Sell with no broker and save thousands of your hard earned equity!

(u)

This package can be offered for any property throughout the United States. Once you purchase our Realtor.com package everything you need to complete your ad, webpage, phone hotline, open houses and tour is immediately available so you can get started right away.

(v)

Once you complete the forms and send them, along with your photos, to us, your home will be on Realtor.com within 72 hours. Your property will remain posted for 6 months.

(w)

Package includes Showcase Listing on REALTOR.com®, "Where the world shops for real estate". Reach more than eight million consumers per month. Realtor.com is the number one choice among buyers searching properties for sale or lease. If you are looking for the ultimate exposure when trying to sell or lease your property without having to commit to a broker compensation this is the For Sale by Owner plan for you.

(x)

> The official website of the National Association of REALTORS®
> Realtor.com is the world's largest real estate database of homes
> for sale and are largest most active website with more than 353
> million page views monthly.
>
> REALTOR.com houses more than 4.2 million listings nationwide.
> But that's not all. ListedOnRealtor.com also gives your property
> even greater exposure on tons of leading real estate websites
> and portals.



Attached as **Exhibit I** are examples of Defendants Infringing Advertisements that prominently reference the REALTOR Marks a staggering number of times in order to mislead and deceive viewers thereof as to the source, sponsorship, or origin of the advertised goods and services.

40. Moreover, Defendants' websites and advertisements also contain the following false notices:

Copyright and Trademark Notice

NATIONAL ASSOCIATION OF REALTORS® and Move, Inc.
All rights reserved. Equal Housing Opportunity REALTOR.com® is the official site of the National Association of REALTORS® and is operated by Move, Inc.

REALTOR® - A registered collective membership mark that identifies a real estate professional who is a member of the National Association of REALTORS® and subscribes to its strict Code of Ethics. Inquiries regarding the Code of Ethics should be directed to the board in which a REALTOR® holds membership.

These false and misleading notices deceptively imply that the website and advertisements are those of NAR.

41. Defendants use the Infringing Domain Names and Infringing Advertisements to attract, for commercial gain, Internet users and consumers to their websites based on a likelihood of confusion with NAR's REALTOR Marks. Defendants generate revenue from having homeowners sign up for their FSBO services.

42. Defendants' use of the Infringing Domain Names and Infringing Advertisements mislead property owners to believe that they may directly advertise their homes on NAR's <Realtor.com> website without listing their property with a real estate broker. Further, by using the REALTOR Marks (including the block R design mark) through the Infringing Domain Names and Infringing Advertisements, Defendants further mislead property owners into believing NAR sponsors, endorses, or approves such activity.

43. Defendants' use of the Infringing Domain Names and Infringing Advertisements mislead NAR members to believe that property owners may directly advertise their homes on NAR's <Realtor.com> website without listing their property with a real estate broker. Further, by using the REALTOR Marks (including the block R design mark) through the Infringing Domain Names and Infringing Advertisements, Defendants further mislead NAR members into believing NAR sponsors, endorses, or approves such activity.

44. NAR has received numerous complaints, questions, and instances of actual confusion from its members objecting or otherwise relating to NAR allowing the display of FSBO properties on <Realtor.com>. These communications are due to the misleading and deceptive Infringing Domain Names and Infringing Advertisements, and include, but are not limited to, the following:

> (a) "...Since Realtor.com is owned by NAR and paid for by my dues which basically means it is my website along with all the other Realtors it offends me that a FSBO has the ability to advertise on my website without paying

19

dues!"

(b) "I am wondering why Realtor.com<http://Realtor.com> is now supporting FSBO's since they are the official NAR web site for our listings." [Referencing email advertisement for ListItOnRealtor.com]

(c) "I just can't believe our own REALTOR.Com is doing such a thing [email advertisement for ListItOnRealtor.com]? This is just unbelievable!!!"

(d) "Please review the below solicitation. Sounds like Realtor.com is in competition with agents. . . By the way, did you notice the name of their domain? It's that a trademark infringement? . . . I find his email and domain name misleading to say the least."

(e) "Is ListedOnRealtor.com NAR approved?"

(f) "I find his email and domain name misleading to say the least." [Referencing email advertisement for ListItOnRealtor.com]

(g) "One of our large broker NAR Directors sent this link [listedonrealtor.com] to me. Are you familiar with this site? The broker is questioning how realtor.com will allow use of its logo for advertising this kind of program, and he does not understand how realtor.com will accept listings like this. . . "

(h) There is a copyright disclaimer and appears to be owned/operated by realtor.com but the company name is "Listed On' INC" Ft Myers FL. "

(i) "Please investigate this [http://www.ListItOnRealtor.com] apparent misuse of trademarks and violations of the Code of Ethics"

(j) "At first sight, it appeared Realtor.com was the originator and trying to cut out the REALTOR® by 'saving' thousands in commission. On further investigation, this was misleading in that it uses Realtor.com and it's trademark and then in small print under it, adds, and other real estate websites… In reviewing your guidelines, if nothing else, it appears to be a trademark infringement, please deceptive advertising."

(k) "One of my members would like to know if this is a violation – the url of: www.ListItOnRealtor.com."

(l) "Is his domain name [ListItOnRealtor.com] a violation of NAR trademark?"

(m)"I just received a call from a member of the public complaining about a site called 'ListitonREALTOR.com'"

(n) "Hello, I am forwarding you a solicitation I received by email promoting Realtor.com by a real estate company out of Florida that I feel may be in violation." [Referencing email advertisement for ListItOnRealtor.com]

(o) "You may wish to investigate this solicitation. This came to me after I listed a home for rent on Craigslist.com that was clearly marketed as a Broker represented listing."

(p) "Is there a movement against realtor.com<http://realtor.com> advertising to the public a services that promises 'no commission' to homeowners seeking to rent their properties?"

(q) "...It [listedonrealtor.com] is a violation of the trademark 'REALTOR®' and it is advertised in a way to deceive visitors (clearly violating our code of ethics). Could you please help me understand if I am indeed accurate in my judgment?"

(r) "Take a look at this URL website [listedonrealtor.com]. One of our top brokers sent it to us after he got it from one of his agents. They interpret it as 'realtor is helping FSBOs by allowing FSBOs to advertise on realtor.com' are they're not happy. It looks like the site is actually a broker's/agent's site and the broker/agent are soliciting FSBOs and offering to essentially resell the customer a Showcase type product. . . Please let me know what you think is happening . . ."

(s) "There appears to be a Realtor Trademark violation at this URL: http://listedonrealtor.com/ In addition, they appear to be promoting not using a Realtor for transactions and listing FSBO directly on Realtor.com. Can someone please contact me regarding this issue sent in as a complaint by one of our members?"

(t) "An AE sent me this message. It certainly does seem that http://www.listedonrealtor.com is in violation of our member mark . . . Please let me know whether it is in violation, and what you will do. . ."

(u) "Hello, I received this email solicitation from this company, listedonRealtor.com and they are using the Realtor Logo in their marketing."

(v) "How can this be?" [referencing FSBO]

(w) "My past president sent this email to me and I think it's misleading, not to mention a violation of the use of the trademark . . ."

(x) "REALTORdotcom what email address do we use to forward spam that is violating the Realtor.com branding?"

(y) "I had a member forward this website to me and asked if it was in violation of the REALTOR member mark?"

45.     When alerted to Defendant's objectionable behavior, NAR sent Defendants cease and desist letters and email messages objecting to Defendants' Infringing Domain Names and Infringing Advertisements, including the improper use of the REALTOR Marks. Attached as **Exhibit D** are copies of correspondence NAR sent to Defendant Fothergill.

46.     At all times relevant, Defendants had notice regarding the limitation on their use of the REALTOR Marks and were aware that registration and use of the Infringing Domain Names and use of Infringing Advertisements were in violation of the limited license granted to Defendants by NAR.

47.     Defendants activities were undertaken in bad faith to take advantage of the goodwill of the REALTOR Marks and to confuse consumers into believing that the Infringing Domain Names and the services sold by Defendants, which include direct listing on NAR's <Realtor.com> website in violation of NAR's policies, have a connection or affiliation with NAR.

48.     Defendants' activities harm and interfere with NAR's business, relationships, reputation and goodwill and are likely to cause confusion and deception as to source, sponsorship, affiliation or endorsement, with NAR and its REALTOR Marks.

49.     Defendants' acts greatly and irreparably injure NAR and will continue to so injure NAR unless restrained by this Court; wherefore, NAR is without an adequate remedy at law.

## FIRST CLAIM FOR RELIEF
### (FALSE DESIGNATION OF ORIGIN IN VIOLATION OF THE LANHAM ACT)

50.     NAR restates the allegations of the preceding paragraphs.

51.     Defendants' advertisements, domain names, and web pages include false or misleading statements that harm NAR and others in the marketplace.

52.     Defendants have willfully or knowingly made these false or misleading statements in their advertisements, domain names, and web pages.

53.     Defendants' use of these false or misleading statements in their advertisements, domain names and on their web pages have caused or are likely to cause confusion, mistake or deception as to the source or origin, sponsorship or approval of Defendants or their services, in that purchasers and others in this judicial district and elsewhere in the United States are likely to believe that Defendants are associated with or related to NAR or authorized by NAR to offer FSBO listing services under the REALTOR Marks.

54.     Defendants' acts injure NAR's image and reputation with consumers and NAR members in this judicial district and elsewhere in the United States by creating confusion about, and dissatisfaction with, NAR.

55.     Defendants' deliberate use of the REALTOR Marks in their advertisements, domain names, and web pages constitutes a false designation of origin in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

## SECOND CLAIM FOR RELIEF
### (FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT)

56.     NAR restates the allegations of the preceding paragraphs.

57.     Defendants' false, deceptive, and misleading descriptions and representations of fact have deceived and are likely to deceive purchasers and consumers into, among other things, purchasing goods and services from Defendants.

58.     Defendants' false, deceptive, and misleading statements have damaged NAR's goodwill, reputation, and sales.

59.     Defendants' conduct is willful, deliberate, intentional, and in bad faith. Defendants have made false, deceptive, and misleading descriptions and representations of fact in their commercial advertising concerning the nature, characteristics, and qualities of their goods, services, and commercial activities in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

### THIRD CLAIM FOR RELIEF
### (TRADEMARK INFRINGEMENT)

60.     NAR restates the allegations of the preceding paragraphs.

61.     Defendants' acts exceed the scope of Defendant Fothergill's limited license to use the REALTOR Marks and have caused or are likely to cause confusion, mistake or deception as to the source or origin, sponsorship or approval of Defendants or their services, in that purchasers and others in this judicial district and elsewhere in the United States are likely to believe that Defendants are authorized by NAR to offer the services in the Infringing Advertisements and on Defendants' websites under the REALTOR Marks.

62.     Defendants' acts injure NAR's image and reputation with consumers and members in this judicial district and elsewhere in the United States by creating confusion about, and dissatisfaction with, NAR.

63.     Defendants' deliberate use of the REALTOR Marks in their advertisements, domain names, and on their web pages constitutes trademark infringement of the REALTOR Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

### FOURTH CLAIM FOR RELIEF
### (UNFAIR COMPETITION UNDER ILLINOIS STATE LAW)

64.     NAR restates the allegations of the preceding paragraphs.

24

65.     Defendants' use of the REALTOR Marks in connection with the Infringing Domain Names, their websites and advertisements is likely to cause confusion and deception as to source, sponsorship, affiliation, or endorsement with NAR and its REALTOR Marks.

66.     Defendants' use of the REALTOR Marks in connection with the Infringing Domain Names exceeds the scope of Defendant Fothergill's limited license to use the REALTOR Marks and deceptively represents that Defendants' websites and company are sponsored, affiliated, or endorsed by NAR.

67.     Defendants' actions are likely to cause confusion or to cause mistake or to deceive in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS §§ 510/1, *et. seq.*, and the common law of the State of Illinois.

## FIFTH CLAIM FOR RELIEF
## (VIOLATION OF THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT)

68.     NAR restates the allegations of the preceding paragraphs.

69.     Defendants registered or used the Infringing Domain Names and web pages with bad faith intent to profit from the REALTOR Marks.

70.     Defendants' actions constitute cybersquatting in violation of the Anticybersquatting Consumer Protection Act, Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

## PRAYER FOR RELIEF

WHEREFORE, in consideration of the foregoing, NAR prays for judgment as follows:

1.     That Defendants, and all persons acting in concert or participating with Defendants, be preliminarily and permanently enjoined from:

(a) Using, registering or maintaining any registration of the Infringing Domain Names or any other names, words, designations or symbols consisting of,

incorporating in whole or part, or otherwise confusingly similar to the REALTOR Marks or any other trade names, trademark or service marks of NAR;

(b) Using any names, words, designations or symbols consisting of, incorporating in whole or part, or otherwise similar to the REALTOR Marks or any other NAR trademark anywhere on any website or advertisement of Defendants;

(c) Using any names, words, designations or symbols consisting of, incorporating in whole or part, or otherwise similar to the REALTOR Marks or any other NAR trademark in any buried code, metatags, search terms, keywords, key terms, hits generating pages, or any other devices used, intended, or likely to cause any website of Defendants to be listed by any Internet search engines in response to any searches that include any terms identical with or confusingly similar to the REALTOR Marks or any other NAR trademarks;

(d) Otherwise infringing NAR's trademarks;

(e) Making any description or representation stating or implying that Defendants' goods or services, domain names, or websites are in any way affiliated, associated, authorized, sponsored, endorsed, or otherwise connected with NAR;

(f) Any other conduct that is likely to cause confusion or to cause mistake or to deceive as to the source, affiliation, connection, or association of Defendants' domain names, websites, products or services with NAR; and

(g) Making any description or representation that FSBO properties may be displayed on <Realtor.com>.

2.      That Defendants be ordered to disclose to the Court and NAR all other domain name registrations owned directly or indirectly by Defendants, or by entities in which Defendants have a financial interest, in order to permit the Court and NAR to consider whether any such other registrations should be subject to relief in this matter;

3.      That Defendants and all persons acting in concert or participating with Defendants be ordered to transfer to NAR their registrations for the Infringing Domain Names and any other registrations as may be determined by the Court as appropriate herein for relief. 15 U.S.C. § 1125(d)(1)(C);

4.      That Defendants be ordered to pay statutory damages in the amount of $500,000.00, or $100,000.00 per domain name. 15 U.S.C. § 1117(d);

5.      That Defendants be ordered to pay NAR all profits realized by Defendants by reason of Defendants' unlawful acts as set forth in this Complaint. 15 U.S.C. § 1117(a);

6.      That Defendants be ordered to pay NAR all damages suffered by NAR by reason of Defendants' unlawful acts as set forth in this Complaint. 15 U.S.C. § 1117(a) and 815 ILCS 510/3;

7.      That the Court award NAR three times the damages suffered by reason of the intentional, unlawful acts of the Defendants as set forth in this Complaint. 15 U.S.C. § 1117(a);

8.      That Defendants be required to file with this Court and serve on the undersigned counsel for NAR within thirty (30) days after the entry of judgment, a written report under oath setting forth in detail the manner in which Defendants have complied with the injunction ordered by this Court. 15 U.S.C. § 1116;

9.      That Defendants be ordered to pay NAR the costs of this action and reasonable attorneys' fees. 15 U.S.C. § 1117(a) and 815 ILCS 510/3; and

10.    Award NAR such other relief as this Court may deem just and proper.


**DATED**:    November 10, 2011    Respectfully submitted,

**PARTRIDGE IP LAW P.C.**
Mark V.B. Partridge (mark@partridgeiplaw.com)
Colin T.J. O'Brien (colin@partridgeiplaw.com)
Jordan A. Arnot (jarnot@partridgeiplaw.com)
161 North Clark Street
Suite 4700
Chicago, Illinois 60601
Tel:    (312) 634-9500
Fax:    (312) 634-9505

*Attorneys for the Plaintiff*
*National Association of Realtors*